UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROYAL STEVENS | CIVIL ACTION |
| VERSUS | NO. 20-2704 |
| TIM HOOPER | SECTION: "G"(3) |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Royal Stevens, is a state prisoner incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana. On July 24, 2015, Stevens was charged by bill of information in the Parish of Jefferson with four counts of armed robbery in violation of La. Rev. Stat. §§ 14:64 and 14:64.3.[1] On September 23, 2016, the state filed a bill of information amending the factual allegations supporting each armed robbery with a firearm charge.[2] On March 8, 2017, the state filed a second amended bill of information.[3] On March 14, 2017, Stevens withdrew his original plea of not guilty and entered a plea of guilty as to all four counts charged in the second amended

---

[1] State Rec. Vol. 1 of 9, Bill of Information, 7/24/15.
[2] State Rec., Vol. 1 of 9, Amended Bill of Information, 9/23/16.
[3] State Rec., Vol. 1 of 9, Second Amended Bill of Information, 3/8/17.

bill of information.[4] Pursuant to the plea agreement, the State agreed not to file a multiple bill of information, and the trial court sentenced Stevens to thirty-five years imprisonment as to each count of armed robbery under La. Rev. Stat. § 14:64, along with five years imprisonment on each count for the firearm enhancement under La. Rev. Stat. § 14:64.3(A), to run consecutive with the original sentence, and concurrently with each count, for a total sentence of forty years imprisonment to be served at hard labor without the benefit of parole or suspension of sentence.[5]

On March 13, 2018, Stevens filed an application for post-conviction relief alleging that his guilty plea was not knowingly, voluntarily or intelligently made due to ineffective assistance of counsel.[6] The state district court construed the application as a request for an out-of-time appeal, granted the request for an out-of-time appeal, and assigned the Louisiana Appellate Project to the appeal.[7] The court also dismissed without prejudice Stevens's application for post-conviction relief.[8]

Stevens's appointed counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), arguing that there were "no non frivolous issues to raise on appeal" along with a motion to withdraw as counsel with the Louisiana Fifth Circuit.[9] Stevens filed a pro se brief raising the following claims for relief: (1) his guilty plea was not knowingly, voluntarily, and intelligently made; (2) the multiplicious bill of information violated double jeopardy.[10] The Louisiana Fifth

---

[4] State Rec. Vol. 1 of 9, Defendant's Acknowledgement of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 3/14/17; Guilty Plea and Sentencing Minutes, 3/14/17; State Rec. Vol. 5 of 9, Guilty Plea and Sentencing Transcript, 3/14/17.
[5] State. Rec. Vol. 1 of 9, Guilty Plea and Sentencing Minutes, 3/14/17; Uniform Commitment Order, 3/14/17; State Rec. Vol. 5 of 9, Guilty Plea and Sentencing Transcript, 3/14/17.
[6] State Rec. Vol. 1 of 9, Uniform Application for Post-Conviction Relief, 3/13/18.
[7] State Rec. Vol. 1 of 9, Order, 4/5/18.
[8] Id.
[9] State Rec. Vol. 2 of 9, Appeal Brief, 2018-KA-0344, 7/6/18; Motion to Withdraw as Attorney of Record, 2018-KA-0344, 7/6/18.
[10] State Rec. Vol. 2 of 9, Pro Se Appeal Brief, 2018-KA-0344, 8/20/18.

2

Circuit affirmed petitioner's convictions on December 5, 2018.[11] Stevens did not file a writ application with the Louisiana Supreme Court.

In the interim, on April 9, 2018, Stevens filed an amended petition for post-conviction relief.[12] On April 19, 2018, the state district court dismissed without prejudice petitioner's amended application for lack of jurisdiction under La. Code Crim. P. art. 916.[13]

On December 13, 2018, Stevens filed his third application for post-conviction relief again alleging that his guilty plea was not knowingly, voluntarily, or intelligently made due to his counsel's ineffective assistance.[14] He alleged his counsel was ineffective in failing to: (1) adequately investigate his alibi defense or interview alibi witnesses; (2) investigate exculpatory leads and discover exculpatory evidence; (3) investigate the factual basis of the crimes charged, the relevant sentencing laws, and interview the actual alleged victims of the crime, which resulted in his counsel erroneously advising him of his maximum sentencing exposure; (4) investigate the laws relevant to the crime charged, thereby erroneously advising him of an essential element; and (5) notify the court of a conflict of interest which prevented counsel from effectively preparing a defense.[15] After the State filed a response, Stevens filed a traverse as well as a motion requesting an evidentiary hearing.[16] On May 10, 2019, the state district court denied the request for evidentiary hearing.[17] On that same day, by separate order, the court denied Stevens's application for post-conviction relief.[18] The court explained:

---

[11] State v. Stevens, 260 So. 3d 776 (La. App. 5th Cir. 2018); State Rec. Vol. 4 of 9.
[12] State Rec. Vol. 4 of 9, Amended Uniform Application for Post-Conviction Relief, 4/17/18 (signed 4/9//18).
[13] State Rec. Vol. 4 of 9, Order, 4/19/18.
[14] State Rec. Vol. 4 of 9, Second Amended Uniform Application for Post-Conviction Relief, 12/26/18 (signed 12/13/18).
[15] State Rec. Vol. 4 of 9, Claims and Facts in Support of Application for Post Conviction Relief, p.2, 12/26/18 (signed 12/26/18).
[16] State Rec. Vol. 5 of 9, State's Response to Post Conviction Application, 3/29/19; Petitioner's Response to State's Return and Answer, 5/3/19; Motion to Set Evidentiary Hearing and Issue Transport Order, 5/3/19 (signed 4/25/19).
[17] State Rec. Vol. 5 of 9, Order, 5/10/19.
[18] State Rec. Vol. 5 of 9, Order, 5/10/19.

>The petitioner fails to meet his heavy burden under *Strickland*. His claims are vague and conclusory. He fails to show deficiency by his extremely experienced criminal defense attorney or that he would have insisted on going to trial, absent errors of counsel. The petitioner fails to weigh the strength of the state's case against him. The evidence includes video surveillance footage of the robberies and identification from the warden where the petitioner was incarcerated (as shown by motions in the court record). The petitioner fails to credit counsel with negotiating an agreement from the state not to file a multiple offender bill of information, which would have enhanced the defendant's sentence. The court notes that the defendant agreed to receive sentences far below the maximum allowed by law.
>After considering the pleadings and the record, the court finds that the petitioner fails to meet his burden of proof. The court agrees with the state's assertion that claims one and five fail to state the required reasonable particularity and thus should be dismissed under LSA-C.Cr.P. art 926(B)(3). The court further finds that the petitioner's remaining claims fails to meet the heavy burden of ineffective assistance case law and post-conviction statutes, notably LSA-C.Cr.P. art. 930.2 and 930.3.[19]

The Louisiana Fifth Circuit denied Stevens's related writ application finding that Stevens failed to show he received ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[20] The court denied Stevens's application for rehearing without reasons.[21]

On November 10, 2019, Stevens filed an application for extension of time to file a writ application.[22] Stevens filed a writ application with the Louisiana Supreme Court alleging: (1) the state district court erred in denying his application for post-conviction relief without an evidentiary hearing; (2) ineffective assistance of counsel in failing to (a) interview or investigate known alibi witnesses; (b) investigate the factual allegations of each crime charged in the bill of information;

---

[19] Id., at pp. 1-2.
[20] Stevens v. Goodwin, 19-KH-413 (La. App. 5th Cir. Sept. 30, 2019) (unpublished); State Rec. Vol. 7 of 9; State Rec. Vol. 7 of 9, 5th Cir. Writ Application, 19-KM-368, 8/22/19.
[21] State Rec. Vol. 7 of 9, 5th Cir. Order, 19-KH-413, 11/4/19; Application for Rehearing, 19-KH-413, 10/29/19.
[22] State Rec., Vol. 8 of 9, Application for Extension to File, 12/27/19 (postmarked 11/12/19).

4

(c) properly explain the law of principles.[23] On July 17, 2020, the Louisiana Supreme Court denied the writ application as untimely pursuant to La. S. Ct. R. X § 5.[24]

On September 28, 2020, Stevens filed the instant federal application seeking habeas corpus relief raising the following claims: (1) double jeopardy; (2) ineffective assistance of counsel for failing to investigate and/or interview known alibi witnesses; (3) ineffective assistance of counsel for failing to investigate the factual basis of each crime charged; (4) ineffective assistance of counsel for failing to properly explain the essential elements of "principal."[25] The state has filed a response conceding that the application is timely. The state claims that Stevens did not properly exhaust all of his claims.[26] Stevens filed two motions for extensions of time to file a traverse.[27] Despite being granted extensions of time to file his traverse by April 27, 2021, and later, June 11, 2021, to date, Stevens has not filed one.[28]

**Exhaustion**

The State claims that Stevens failed to exhaust his claims because he did not raise them before the Louisiana Supreme Court on direct appeal and failed to raise them in a timely fashion when he filed his writ application related to his post-conviction application. It further argues that Stevens's claims are procedurally barred because petitioner no longer has the opportunity to present his unexhausted claims to the Louisiana Supreme Court.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct

---

[23] State Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 20 KH 121, 1/17/20.
[24] Stevens v. Goodwin, 298 So.3d 176 (La. 2020); State Rec. Vol. 9 of 9.
[25] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner declared that he placed his federal application in the prison mailing system on September 28, 2020. Rec. Doc. 1, pp. 15.
[26] Rec. Doc. 14.
[27] Rec. Docs. 17 and 17.
[28] Rec. Docs. 16 and 18.

alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role 'in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

"To exhaust, a petitioner 'must have fairly presented the substance of his claim to the state courts.' " Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001). That requirement applies to all levels of review in the state court system, meaning that a petitioner's federal claim must have been "fairly presented" to "each appropriate state court (*including a state supreme court with powers of discretionary review*)." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, in order to exhaust fully, the substance of the federal habeas claim must be fairly presented to the State's highest court. See Whitehead v. Johnson, 157 F.3d at 387 (citing Picard v. Connor, 404 U.S. 270, 275–78 (1971)). In Louisiana, the highest state court is the Supreme Court of Louisiana. See La. Const. art. V, § 5(A). Applying those guiding principles, it is clear that the claims in petitioner's federal applications are unexhausted for the following reasons.

6

In this case, Stevens raised the issue of double jeopardy in his direct appeal to the Louisiana Fifth Circuit. The claim was found to be without merit.[29] Stevens did not file a writ application with the Louisiana Supreme Court. Stevens, therefore, did not give the Louisiana Supreme Court an opportunity to review his first federal habeas claim. Because petitioner abandoned his double jeopardy claim in the state courts before presenting it to the Louisiana Supreme Court, the claim is clearly unexhausted.

Stevens raised his ineffective assistance of counsel claims in his third application for post-conviction relief. The claims were found to be meritless by the state district court as well as the Louisiana Fifth Circuit. Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court *in a procedurally proper manner* according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988) (emphasis added). While Stevens filed a motion for extension of time to file a writ application with the Louisiana Supreme Court[30], and filed his writ application, his application was found to be untimely under La. S. Ct. R. X § 5, and his claims were *not* considered.[31]

Because the Louisiana Supreme Court expressly held that his writ application was untimely, petitioner has not "fairly presented" his three ineffective assistance of counsel claims to that court. As a result, the exhaustion requirement has not been met. See, e.g., Jackson v. Vannoy, Civ. Action No. 17-00265, 2018 WL 1441154, at *7 (E.D. La. Feb. 27, 2018) ("[Petitioner]'s writ application to the Louisiana Supreme Court was not considered by the Court because it was not

---

[29] State v. Stevens, 260 So. 3d at 782-84; State Rec. Vol. 4 of 9.

[30] State Rec., Vol. 8 of 9, Application for Extension to File, 12/27/19 (postmarked 11/12/19). The Louisiana Supreme Court does not ordinarily grant extensions. See Butler v. Cain, 533 F.3d 314, 319 (5th Cir. 2008) ("A Louisiana Supreme Court rule requires that an 'application seeking to review a judgment of the court of appeals,' must be filed within thirty days; it specifies that '[n]o extension of time therefor will be granted.' La. Sup. Ct. R. X, § 5(a). While another section of the Rule – Section 5(b) – allows the Supreme Court to extend the time for filings ... 'upon proper showing,' that applies to narrow categories of applications....").

[31] Stevens v. Goodwin, 298 So.3d 176 (La. 2020); State Rec. Vol. 9 of 9.

7

timely filed. It is clear that a claim presented in an untimely writ application has not been 'fairly presented' for exhaustion purposes. ... Therefore, these ... claims ... were not presented to the Louisiana Supreme Court in a procedurally proper manner and cannot be considered to have been exhausted."), report and recommendation adopted, 2018 WL 1409270 (E.D. La. Mar. 21, 2018). Therefore, petitioner's claims could be dismissed with prejudice on that basis.

Further, as the State notes in its response, Stevens's failure to exhaust his claims in state court presents an additional problem and basis for dismissal of his federal habeas claims, i.e., a procedural bar in federal court. If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court. Nobles v. Johnson, 127 F.3d at 420 (internal quotation marks omitted)

There is little doubt that any new attempt by petitioner to exhaust his double jeopardy claim and his ineffective assistance of counsel claims would be rejected by the state courts on procedural grounds. If he now tried to file a writ application with the Louisiana Supreme Court seeking review of the Louisiana Fifth Circuit Court of Appeal's 2018 ruling, that writ application would obviously be dismissed as untimely. See Louisiana Supreme Court Rule X, § 5(a).[32] If he instead

---

[32] That Rule states:

> *An application seeking to review a judgment of the court of appeal* either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or *after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal*; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing. *No extension of time therefor will be granted.*

Louisiana Supreme Court Rule X, § 5(a) (emphasis added).

attempted to file an entirely new state post-conviction application reasserting the double jeopardy and ineffective assistance of counsel claims, that application would be denied as both repetitive under La. Code Crim. P. article 930.4[33] and untimely under La. Code Crim. P. art. 930.8.[34]  See, e.g., State ex rel. Edwards v. State, 16-0974, 2017 WL 4231305 (La. Sep. 22, 2017).

A federal habeas petitioner may be afforded federal review of a procedurally defaulted claim only if he demonstrates "cause" for his default and "prejudice attributed thereto," or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997) (citing Coleman v. Thompson, 501 U.S. 722, 731–32 (1991)); Amos v. Scott, 61 F.3d 333, 338–39 (citing Harris v. Reed, 489 U.S. 255, 262 (1989) and Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). "To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).

Here, Stevens has made no effort to establish cause for his failure to pursue the defaulted claims in the Louisiana Supreme Court.  His own ignorance of procedural rules for filing does not suffice as cause.  See Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992).  Stevens's pro se status also does not excuse his failure to exhaust.  White v. Lea, Civ. Action No. 14–1782, 2015 WL 222360, at *5 (E.D. La. Jan. 14, 2015) (citing Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004)

---

[33] In pertinent part, that article provides:

> B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief.
> ....
> D. A successive application shall be dismissed if it fails to raise a new or different claim.

La. Code Crim. P. article 930.4.

[34] Article 930.8 generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final.  Although there are exceptions provided in the article, those exceptions to do not appear to be applicable to petitioner's double jeopardy claim.

9

and Josselyn v. Dennehy, 475 F.3d 1, 5 (1st Cir. 2007)); Messick v. Cain, Civ. Action No. 12–2945, at *14 (E.D. La. Dec. 29, 2014), certificate of appealability denied, No. 15-30035 (5th Cir. Oct. 7, 2015).

This Court's review of the record does not support a finding that any factor external to the defense prevented him from raising his claims in a procedurally proper manner or that any action or inaction on the part of the state prevented him from doing so. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n. 43); Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

Because Stevens has not met the "cause and prejudice" test, his claims are barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).

By entering his unconditional guilty plea, petitioner has already conceded under oath that he in fact committed and was guilty of the crimes of which he stands convicted. Therefore, he faces a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be *exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence*—that was not presented at trial. Because such evidence is

10

>obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Second, the court's analysis is not limited to the new evidence presented by a petitioner in support of his actual innocence claim. Moore v. Quarterman, 534 F.3d 454, 465 (5th Cir. 2008). "The habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that govern at trial." House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 327, 115 S.Ct. 851). In doing so, the court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." Schlup, 513 U.S. at 331-32, 115 S.Ct. 851. The "demanding" actual innocence standard "permits review only in the extraordinary case." Bell, 547 U.S. at 538 (citation omitted); see also Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir. 1999) ("[O]ur precedent confirms that the mountain ... a petitioner must scale in order to prove a fundamental miscarriage claim is daunting indeed.").

Stevens's attempts to make a colorable showing of factual innocence by pointing to two unnotarized statements by Tina and Brian Maurice.[35] Tina Maurice, Stevens's girlfriend or fiancée, states in her statement, dated June 21, 2016, that she picked up Stevens from Shawn Pollard's residence at approximately 4:30 p.m. on May 15, 2015.[36] She states that she and Stevens drove to the Racetrac Service Station on Lafayette Street where Stevens pumped gas into the vehicle.[37] Tina Maurice states they drove to her mother's residence in New Orleans to pick up her children.[38] They then went to Ponchartrain Oaks apartment complex where Stevens borrowed tools

---

[35] Rec. Doc. 1-2, pp. 34-35.
[36] Rec. Doc. 1-2, p. 34.
[37] Id.
[38] Id.

11

from a friend, Braxton Jones, to reassemble their sectional sofa.[39] Thereafter, they then went home and stayed there until she gave Stevens a ride to Chenault Creek Apartments at approximately 7:00 p.m.[40] Tina Maurice claims that at no time was Stevens out of her presence from 4:30 pm until 7:00 p.m. on the day of the robberies.[41]

Brian Maurice, in a statement signed August 17, 2016, states that he was at his mother's home at approximately 5:30 p.m. on May 15, 2015, when he observed his sister, Tina Maurice, and Stevens pick up Tina's children.[42] He states that they left approximately five to ten minutes later.[43]

The Court first notes that the foregoing evidence cited by petitioner simply was not "new." Admittedly, the jurisprudence is conflicting on what qualifies as "new" evidence in this context. As the United States Fifth Circuit Court of Appeals has observed:

> The Supreme Court has not explicitly defined what constitutes "new reliable evidence" under the Schlup actual-innocence standard, and there is a circuit split.[FN 1] "This court has yet to weigh in on the circuit split concerning what constitutes 'new' evidence." Fratta v. Davis, 889 F.3d 225, 232 (5th Cir. 2018).
>
> > [FN 1] See W right [v. Quarterman,] 470 F.3d [581,] 591 [(5th Cir. 2006)] (collecting cases). The disagreement centers on whether "new reliable evidence" for the purpose of the Schlup actual innocence gateway must be newly discovered, previously unavailable evidence, or, instead, evidence that was available but not presented at trial. Compare Osborne v. Purkett, 411 F.3d 911, 920 (8th Cir. 2005) (holding that evidence is "new" only if it was unavailable at trial and could not have been discovered earlier through due diligence), and Amrine v. Bowersox, 238 F.3d 1023, 1028 (8th Cir. 2001) (same), with Riva v. Ficco, 803 F.3d 77, 84 (1st Cir. 2015) (considering newly presented evidence "of opinions from a psychiatric expert that [petitioner] recently retained"), Rivas v. Fischer, 687 F.3d 514, 543 (2d Cir. 2012) (finding that "new

---

[39] Id.
[40] Id.
[41] Id.
[42] Rec. Doc. 1-2, p. 35.
[43] Id.

> evidence" is "evidence not heard by the jury"), Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003) ("All Schlup requires is that the new evidence is reliable and that it was not presented at trial."), and Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003) (holding that "habeas petitioners may pass Schlup's test by offering 'newly presented' evidence of actual innocence").

Hancock v. Davis, 906 F.3d 387, 389-90 (5th Cir. 2018), cert. denied, 139 S.Ct. 2714 (2019). That said, the Fifth Circuit then nevertheless went on to hold:

> Evidence does not qualify as "new" under the Schlup actual-innocence standard if "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." Moore [v. Quarterman, 534 F.3d [454,] 465 [(5th Cir. 2008)]. Consequently, though we have not decided what affirmatively constitutes "new" evidence, *we have explained what does not*.

Id. at 390 (emphasis added).

The aforementioned evidence was obviously known to petitioner prior to the time he made the decision to plead guilty rather than go to trial. Both Tina and Brian Maurice were known to him and could have subpoenaed by him for his trial – if he had opted to face such a trial rather than plead guilty. Therefore, the proposed testimony on which he now attempts to rely was "available" to him and was "within [his] reach." Moore, 534 F.3d at 465. In fact, the statements are dated many months prior to Stevens's guilty plea.

Nonetheless, the Court notes that the statements are far from convincing in any event. Initially, petitioner's relationship with the Tina and Brian Maurice render their affidavits inherently suspect. See, e.g., Milton v. Secretary, Department of Corrections, 347 F. App'x 528, 531 (11th Cir. 2009) (finding the reliability of petitioner's affidavits suspect because they were executed by friends or fellow inmates); Joyner v. Kent, Civ. Action No. 16-165952019 WL 3755973, at *22 (E.D. La. Jun. 20, 2019) ("Exculpatory evidence provided by a relative is similarly suspect.") (citation omitted), report and recommendation adopted, 2019 WL 3753693 (E.D. La. Aug. 8,

13

2019). Further, at the time a search warrant was executed on Tina Maurice's residence in May 2015, she had nothing to say about the investigation and did not wish to cooperate.[44] She did not give Stevens an alibi at that time.

Additionally, when Stevens was interviewed by Gretna Police Department detectives on May 9, 2016, he did not mention that he was with Tina Maurice at the time the robberies occurred, nor did he mention that Brian Maurice, or for that matter, Braxton Jones (who did not execute a statement), saw him the afternoon or evening of the robberies. Rather, Stevens gave a vague statement that he received "a ride to New Orleans East where he later met with Christopher Francois at his apartment sometime between 7:15 -7:30 p.m."[45] He made no mention of going to Tina Maurice's mother's residence to pick up her children, nor did he mention going to Braxton Jones's apartment.[46]

The Supreme Court has made clear that "[a] court may consider how the *timing of the submission* and *the likely credibility of [a petitioner's] affiants* bear on the probable reliability of ... evidence [of actual innocence]." Schlup, 513 U.S. at 332 (emphasis added). Those factors weigh against petitioner in this case. Here, both Tina Maurice and Brian Maurice signed their statements more than a year after the robberies and, significantly, after Stevens gave his statement to police. Given that Tina Maurice initially refused to make a statement shortly after the robberies occurred, but executed her statement over a year after the robberies causes the court to treat the affidavit with a "fair degree of skepticism.". See Strayhorn v. Booker, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (noting that "[l]ong-delayed affidavits" are "treated with a fair degree of skepticism").

---

[44] State Rec. Vol. 2 of 9, Preliminary Examination Transcript, p. 21, 7/10/15.
[45] Rec Doc. 1-2, pp. 29-32 (Narrative dated 5/9/16).
[46] See id.

Petitioner bears the burden of establishing that it is more likely than not that *no* reasonable juror would have convicted him in light of that new evidence. Stevens's purported "new" evidence hardly satisfies the rigorous burden of proof necessary to show factual innocence. He has not shown that it is "more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of this purported new evidence of his factual innocence. Schlup, 513 U.S. at 324.

For these reasons, Stevens's assertion of actual innocence is not sufficient to meet his burden of establishing that it would be a fundamental miscarriage of justice to fail to consider his claims. Stevens, therefore, has failed to overcome the procedural bar to his claims.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Royal Stevens be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[47]

New Orleans, Louisiana, this 24th day of September, 2021.

*[signature]*
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.